UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMCO INSURANCE COMPANY and
DEPOSITORS INSURANCE COMPANY,

        Plaintiffs,        CASE NO. 17-13007
                              HON. DENISE PAGE HOOD
v.

WESTBORN CHRYSLER JEEP INC.,
FRANK BENTLEY, JEFF ROEKLE,
and VANESSA BACON,

        Defendants.
_____/

**ORDER GRANTING PLAINTIFFS'
MOTIONS FOR SUMMARY JUDGMENT [#18 and 19]**

**I.    INTRODUCTION**

Plaintiffs AMCO Insurance Company ("AMCO") and Depositors Insurance Company ("Depositors") filed this declaratory action seeking a determination that they owe no duty to provide insurance coverage or a defense to Defendants Westborn Chrysler Jeep Inc. ("Westborn"), Frank Bentley, Jeff Roekle, or any other party, for any claims made against those Defendants in a state court lawsuit filed by Defendant Vanessa Bacon. Defendants Bentley, Roekle, and Bacon have been defaulted. Each of AMCO and Depositors has filed a Motion for Summary Judgment against Westborn [Dkt. Nos. 18 and 19]. The motions are fully briefed, and a hearing was

1

held on March 21, 2018. For the reasons that follow, both motions are granted.

## II. BACKGROUND

In a state court action, Bacon sued Westborn, Bentley, Roekle, a man named Duvonn E. Davis, Santander Consumer USA, Inc., and Ally Financial, Inc. The lawsuit stems from her involvement in the purchase of two vehicles from Westborn in March 2016, when she allegedly suffered from a mental disability. In that state court action, Bacon alleges that due to her mental disability at that time, she could not knowingly and voluntarily entering into contracts or protect her interests. Bacon alleges that on March 16, 2016, Davis persuaded her to go with him to Westborn for the purpose of acquiring two vehicles, one for Davis and one for his girlfriend (identified only as Meka). Bacon alleges that Davis, Bentley, and Roekle were "acting in concert" to have Bacon sign paperwork to lease a 2016 Chrysler 300S and to purchase a 2016 Dodge Charger. Davis, Bentley, and Roekle, again acting "in concert," allegedly arranged for the purchase of an insurance policy from State Farm Mutual Automobile Insurance Company for the two vehicles "fraudulently identifying [Bacon] as the applicant for said policy or policies." Bacon subsequently filed complaints against Westborn with the Federal Trade Commission, the Detroit Police Department, the Michigan Adult Protective Services, the Better Business Bureau, and the Michigan Attorney General and sought to rescind the transactions.

In the state court action, Bacon filed a 13-count complaint. In Count X, Bacon alleged intentional infliction of emotional stress, specifically alleging that "Defendants' conduct as outlined above was intentional." Dkt. No. 18, Ex. 1, ¶ 65. In Counts XII and XIII, Plaintiff alleges fraud, deceit, misrepresentation, coercion, or unjust enrichment and intentional and malicious acts by Defendants.

AMCO and Depositors are both in the Nationwide family of companies, but they are distinct corporate entities. Plaintiffs suggest that Westborn had three potentially relevant insurance policies with them: a Garage Policy with AMCO, the Depositors Commercial General Liability Policy, and an AMCO Umbrella Policy. The Depositors Commercial General Liability Policy Coverage Form (Coverage A) provides Bodily Injury and Property Damage Liability coverage: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." [Dkt. No. 18, Ex. 2 at 1] The AMCO Garage Policy provides coverage under the Garage Coverage Form, which provides for coverage under "Garage Operations – Other than Covered Autos" and "Garage Operations – Covered Autos." *Id.* at 2-3. Both AMCO Garage Operations' coverages require "bodily injury" or "property damage" arising out of an "accident." Although both AMCO and Depositors offer argument at length with respect to "bodily injury" and "property damage," it does not appear that either are

relevant to the underlying claims or the instant cause of action – as reflected by the fact that Westborn does not acknowledge or address such coverage in its response brief.

The Depositors Commercial General Liability Policy Coverage Form (Coverage B) provides "Personal and Advertising Injury" coverage: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." [Dkt. No. 18, Ex. 2, at 6] The policy defines "personal and advertising injury" as follows:

> "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> a. False arrest, detention or imprisonment;
>
> b. Malicious prosecution;
>
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
>
> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
>
> f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

[Dkt. No. 18, Ex. 2, at 15]

Coverage B also contains exclusions, including:

This insurance does not apply to:

a. Knowing Violation Of Rights Of Another

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. Material Published With Knowledge Of Falsity

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

* * *

d. Criminal Acts

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. Contractual Liability

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. Breach Of Contract

> "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

[Dkt. No. 18, Ex. 2 at 6]

Similarly, the AMCO Garage Policy is modified by the Broadened Coverage – Garages Endorsement, which provides the following coverage agreement:

> SECTION I - PERSONAL AND ADVERTISING INJURY LIABILITY COVERAGE
>
> A. Coverage
>
> We will pay all sums the "insured" legally must pay as damages because of "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the Coverage Territory during the Policy Period. . . .

[Dkt. No. 19, Ex. 2, Broadened Coverage – Garages endorsement, at 1] The policy defines "personal and advertising injury" as:

> "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> a. False arrest, detention or imprisonment;
>
> b. Malicious prosecution;
>
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
>
> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's

6

or organization's goods, products or services;

e.  Oral or written publication, in any manner, of material that violates a person's right of privacy;

f.  The use of another's advertising idea in your "advertisement"; or

g.  Infringing upon another's copyright, trade dress or slogan in your "advertisement".

*Id.* at 3.

The Broadened Coverage – Garages Endorsement, contains several relevant exclusions:

This insurance does not apply to:

a. "Personal and advertising injury":

(1)  For which the "insured" has assumed liability assumed under any contract or agreement. But this exclusion does not apply to liability for damages that the "insured" would have in the absence of the contract or agreement.

(2)  Caused by or at the direction of the "insured" with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

(3)  Arising out of oral or written publication of material, if done by or at the direction of the "insured" with knowledge of its falsity.

* * *

(5)  Arising out of a criminal act committed by or at the direction of any "insured".

(6) Arising out of breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

*Id*. at 2.

Depositors and AMCO first received notice of the claims raised by Bacon after Bacon filed suit. After investigating the claims raised in the underlying suit, Depositors and AMCO issued a reservation of rights letter dated May 25, 2017, stating the numerous defenses to coverage under the three policies. AMCO was providing a defense in the Bacon action under the Garage Policy to Westborn, Roekle, and Bentley pursuant to the reservation of rights. AMCO and Depositors filed this declaratory action on September 13, 2017. The Bacon action was dismissed without prejudice on January 30, 2018.

## III.  APPLICABLE LAW

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *Id.* Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

## IV. ANALYSIS

### A. Jurisdiction

Westborn contends that the Court does not have jurisdiction at this time because there is no current case or controversy. Citing *Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."). *See also*

28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction . . . [to] declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."); *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002) (citation omitted). Westborn's contention is rooted in the fact that the Bacon case (the bases for potential defense and coverage liability for Plaintiffs) recently was dismissed without prejudice and has not been refiled. AMCO's counsel opines that there is only a 50% chance that the Bacon action will be filed again. For those reasons, Westborn asserts there is only a possibility that Plaintiffs could be subject to defend or to coverage liability as a result of the events surrounding the purchase/sale of the two vehicles at Westborn.

As Plaintiffs argue, Westborn's view of the existing controversy is erroneous. "Declaratory judgments are typically sought before a completed injury-in-fact has occurred." *Nat'l Rifle Ass'n of America v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). The general standard for determining whether a declaratory judgment is appropriate is whether it will "serve a useful propose in clarifying and settling the legal relations in issue and whether it will terminate and afford relief from the uncertainty, and insecurity, and controversy giving rise to the proceedings." *Omaha Prop. & Cas. Ins. Co. v. Johnson*, 923 F.2d 446, 447-48 (6th Cir. 1991). In insurance coverage cases, declaratory judgment can be important because "a prompt declaration of policy

coverage would surely serve a useful purpose in clarifying the legal relations at issue."

*Northland Ins. Co. v. Stewart Title Guaranty Co.*, 327 F.3d 448, 454 (6th Cir. 2003) (citation omitted).

The Sixth Circuit has recognized, where insurance claims are involved, a controversy is created at the time of the underlying event:

> The rights and duties defined by this policy are so closely interwoven in both the obligation and the right to defend and the agreement to pay the finally determined liability that they should be considered as a whole, establishing a relationship which from the inception of a possible liability entitled assured to demand and the insurer to deny that the principal part of the insurance, the agreement to indemnify against liability, applies to this case, and hence, entitles plaintiff to prosecute the suit under the Declaratory Judgment Act.

*Ohio Cas. Ins. Co. v. Farmers Bank of Clay*, 178 F.2d 570, 575 (6th Cir. 1949) (citation and internal quotation marks omitted). Other courts have reached the same conclusion:

> Courts have frequently found that in cases regarding liability insurance and a carrier's obligation to indemnify the insured, an actual controversy exists once the events underlying the insured's liability have occurred. *See e.g., Riehl v. Travelers Ins. Co.,* 772 F.2d 19, 23 (3d Cir.1985); *Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp. of America,* 275 F.2d 485, 490 (3d Cir.1958). A party need not wait until an underlying suit has been filed before it seeks declaratory relief.

*Travelers Indem. Co. v. Dammann & Co.*, 2005 WL 3406374, at *2 (D.N.J. Dec. 12, 2005); *E. Edelmann & Co. v. Triple-A Specialty Co.*, 88 F.2d 852, 854 (7th Cir. 1937) ("It was the congressional intent to avoid accrual of avoidable damages to one not

certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued. But the controversy is the same as previously.").

Plaintiffs argue that the Court should continue to exercise jurisdiction over this cause of action and rule on their motion rather than dismissing the case and making them refile the case and summary judgment motions. Plaintiffs alternately suggest that this case be stayed for a period of time.

The Court finds that it has jurisdiction.

**B.  Coverage**

Plaintiffs dedicate a significant portion of their briefs to arguing that there is no bodily injury or property damage – nor an occurrence/accident pursuant to which Plaintiffs might be liable pursuant to the Coverage A portions of its policy(ies). Except with respect to Count IX (as discussed below), however, Westborn does not appear to argue that it is entitled to a defense or coverage on the basis of bodily injury or property damage, nor does Westborn argue that there was any occurrence or accident for which Plaintiffs would be responsible for providing a defense to the Bacon action.

Plaintiffs accurately argue that Bacon's claims allege intentional conduct on

the part of Defendants, including repeated use of terms like "fraudulently," "intentionally," "designed to coerce or deceive," "illegally," "maliciously," "wrongfully," "not due to bona fide error," and "knew or reasonably should have known." As noted above, Bacon alleged in: (1) Count X (intentional infliction of emotional stress) that "Defendants' conduct as outlined above was intentional" Dkt. No. 18, Ex. 1, ¶ 65; and (2) Count XII (Violation of MCL 750.174a, a criminal statute) and Count XIII (Exemplary Damages) that Defendants engaged in fraud, deceit, misrepresentation, coercion, or unjust enrichment and intentional and malicious acts. In Count XIII, the last count, Bacon again alleged "Defendants' conduct as outlined above [in other words, for all of the counts of the complaint] was intentional."[1]

Based on the allegations of intentional and fraudulent actions by Defendants, Plaintiffs argue that such actions cannot be an "accident." *Nabozny v. Burkhardt*, 461 Mich. 471, 478 (2002); *Frankenmuth Mut. Ins. Co. v. Masters*, 460 Mich. 105, 115-16 (1999). The *Nabozny* court held that, if the insured's actions were intentional and created a direct risk of harm, they cannot qualify as "an accident":

"When an insured acts intending to cause property damage

---

[1]Count XI alleged "holder liability" only against Santander Consumer USA, Inc. and Ally Financial, Inc., neither of which were Plaintiffs' insureds or parties to this action.

> or personal injury, liability coverage should be denied, irrespective of whether the resulting injury is different from the injury intended. Similarly, ... when an insured's intentional actions create a direct risk of harm, there can be no liability coverage for any resulting damage or injury, despite the lack of an actual intent to damage or injure."

*Nabozny*, 461 Mich. at 478 (quoting *Masters*, 460 Mich. at 115-16).

Plaintiffs next argue that any claim for "personal and advertising injury" fails as a matter of law. Plaintiffs argue that none of the allegations in the Bacon complaint meet the definition of "personal and advertising injury." Westborn cites Bacon's allegations in Count IX that Westborn and its employees "slander[ed] her credit" when Westborn "reported derogatory and/or disparaging statements [about her] . . . to third parties." Westborn argues that those allegations fall within Plaintiffs' Broadened Coverage – Garages Endorsement, specifically the provision that defines "Personal and advertising injury" to mean an injury "arising out of . . . the following offense[]: . . . d. Oral or written publication, in any manner, of material that slanders or libels a person . . ."

Plaintiffs note that the only potential coverage cited by Westborn is a provision in the Garage Policy issued by AMCO, and not any provisions in the Depositors Commercial General Liability Policy or the AMCO Umbrella Policy. Plaintiffs argue that Depositors should prevail on their summary judgment motion simply due to

14

Westborn's failure to expressly mention the Depositors Commercial General Liability Policy. The Court will not grant Depositors' summary judgment for that reason because the Depositors Commercial General Liability Policy seems to provide for the same "personal and advertising injury" coverage as that of the AMCO Umbrella Policy (see page 4-8). AMCO prevails on its summary judgment motion as it relates to the AMCO Umbrella Policy because Westborn's response did not identify any provisions in the AMCO Umbrella Policy pursuant to which AMCO could be liable to defend and/or provide coverage.

As to the AMCO Garage Policy (and the Depositors corresponding provisons), Plaintiffs argue that there are numerous exclusions that operate to vitiate any "personal and advertising injury" claim. As Plaintiffs argue, "[a]n insurance company may, with the insured's acceptance, insert as many exclusion clauses in its liability policy as it deems proper or necessary. . . ." *Fresard v. Mich. Millers Mut. Ins. Co.*, 414 Mich 686, 694 (1982). "Coverage under a policy is lost if any exclusion within the policy applies to a particular claim." *Allstate Ins. Co. v. Keillor*, 450 Mich 412, 420 (1995). The Broadened Coverage under the AMCO Garage Policy provides that:

This insurance does not apply to:

a. "Personal and advertising injury":
    (1) For which the "insured" has assumed liability assumed under

15

any contract or agreement. But this exclusion does not apply to liability for damages that the "insured" would have in the absence of the contract or agreement.

(2) Caused by or at the direction of the "insured" with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

(3) Arising out of oral or written publication of material, if done by or at the direction of the "insured" with knowledge of its falsity.

* * *

(5) Arising out of a criminal act committed by or at the direction of any "insured".

(6) Arising out of breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

[Dkt. No. 19, Ex. 2, Broadened Coverage – Garages endorsement, at 2] The Depositors "personal and advertising injury" exclusions are the same.

As set forth above, Plaintiffs assert that all of the allegations in the Bacon complaint are based on the contractual agreements that Bacon claims she was forced to enter. Plaintiff contends that the "personal and advertising injury" coverage should be excluded under exclusions (1) and (6) because of the contractual basis of Bacon's claims. Plaintiffs also state that the Bacon complaint alleges that the actions by Westborn and its employees were crimes, in violation of MCL 740.174a, and engaged in a conspiracy to defraud Bacon, which would be a criminal violation of MCL 750.218 (Count XII), and mean that exclusion (5) would apply to bar coverage in this

16

case. Plaintiffs conclude that because Bacon alleges that all actions of Westborn and its employees were intentional (as described above), including the allegations in Count IX for "slander of credit," exclusions (2) and (3) bar all coverage in this matter. [*See* Dkt. No. 1, Ex. 1 at ¶ 61 ("Defendants made or are expected to make the foregoing statements, intentionally, knowing the same to be false and/or with reckless disregard as to their truth or falsity and/or maliciously.")]

Plaintiffs represent that courts have applied these exclusions in similar contexts. *See Grange Ins. Ass'n v. Roberts*, 179 Wash.App. 739, 769 (2013) ("Read in context, the complaint alleges only intentional torts and, thus, Roberts's knowledge of the falsity of her statements may be implied."); *State Auto. Prop. & Cas. Ins. Co. v. Lagrotta*, 529 F. App'x 271, 274 (3d Cir. 2013) ("courts of Pennsylvania have refused to require an insurer to defend an insured for his own intentional torts and/or criminal acts because it would be against public policy.... Accordingly, the policy excludes coverage for intended harm."); *Finnie v. LeBlanc*, 856 So.2d 208, 214 (2003) ("The words of the policy are clear: it simply does not provide coverage for those who knowingly defame and maliciously prosecute others.").

In this case, the Court finds the underlying allegations fall directly within the exclusions and that no coverage exists, even under the "personal and advertising injury" provisions.

## V.    CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the Motions for Summary Judgment filed by Plaintiffs AMCO Insurance Company and Depositors Insurance Company [Dkt. No. 18 and 19] are GRANTED.

IT IS FURTHER ORDERED that Plaintiffs are entitled to, and the Court enters, a DECLARATORY JUDGMENT that Plaintiffs owe no duty to provide insurance coverage for or a defense to Defendant Westborn Chrysler Jeep Inc.

IT IS FURTHER ORDERED that, as a Clerk's Entry of Default has been entered against Defendants Frank T. Bentley, Jeffrey Alan Roekle, Jr., and Vanessa Bacon and none of those Defendants has appeared or challenged the Clerk's Entry of Default against her or him, the Court enters a DECLARATORY JUDGMENT that Plaintiffs owe no duty to provide insurance coverage for or a defense to Defendants Frank T. Bentley, Jeffrey Alan Roekle, Jr., and Vanessa Bacon.

IT IS FURTHER ORDERED that entry of this Order resolves all pending claims in this case and judgment shall be entered accordingly.

IT IS ORDERED.

                              S/Denise Page Hood
                              Denise Page Hood
                              Chief Judge, United States District Court

Dated: June 29, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 29, 2018, by electronic and/or ordinary mail.

                              S/LaShawn R. Saulsberry
                              Case Manager